DECISION AND JUDGMENT ENTRY
{¶ 1} Dawn West appeals the Athens County Court of Common Pleas, Juvenile Division, decision permanently terminating her parental rights to her biological sons, Mitchell West, General West, and Benjerman West. West asserts that the record does not contain clear and convincing evidence that granting permanent custody to Athens County Children Services ("ACCS") is in her children's best interest, because West complied with the requirements of her reunification case plan. Because the standard for determining whether terminating a parent's rights should be terminated is not whether the parent has substantially complied with the case plan, but rather whether the termination is in the child's best interests, and because the record contains clear and convincing evidence that terminating West's parental rights is in her children's best interests, we disagree. West also asserts that the trial court erred in refusing to grant a new trial after West learned of allegations that the children's foster parents mistreated them. We disagree because, after examining the evidence, we find that it is immaterial and would not have changed the outcome of the custody hearing. Accordingly, we overrule both of West's assignments of error, and we affirm the judgment of the trial court.
 I. {¶ 2} West is the biological mother of Benjerman, born February 22, 1995; General, born February 17, 1994; Destiny, born November 12, 1992; and Mitchell, born May 18, 1991. General, Destiny, and Mitchell each have a different biological father. The identity of Benjerman's biological father is unknown. Destiny's biological father participated in these proceedings as described below. The court appointed counsel for the known remaining fathers, but the fathers did not contest ACCS's motion for custody.
 {¶ 3} On March 16, 2001, the trial court approved an emergency custody order removing all four children from West's home and placing them with ACCS due to domestic violence perpetrated by West's live-in boyfriend. On April 16, 2001, the court entered an agreed adjudication of dependency and continued temporary custody with ACCS. At the July 24, 2001 review hearing, the court returned the children to West's custody, but ordered that ACCS retain protective supervision for one year.
 {¶ 4} Approximately two months later, the court again removed the children from West's home and placed them in ACCS's emergency custody when West violated the court's orders by allowing another boyfriend, a convicted and registered sex offender against children, to reside in her home with the children. The court subsequently ordered West to undergo a psychological evaluation. West continued to live with the sex offender for approximately four months following the removal of her children from her home, and put him out only after he was arrested for trying to run over someone with West's car.
 {¶ 5} ACCS ultimately filed a motion to modify the disposition of Destiny from the temporary custody of ACCS to the custody of her father, Everett McKee. The ACCS also filed a motion to modify the disposition of Benjerman, General and Mitchell from the temporary custody of ACCS to the permanent custody of ACCS.
 {¶ 6} The trial court granted custody of Destiny to Everett McKee. The court held hearings on the ACCS motion for permanent custody of Benjerman, General, and Mitchell on February 13, 2003, February 19, 2003, and May 7, 2003. At the hearings, West and her new husband, Nathan Miller, testified, as did Kate Mendenhall and Angie Blakeman of ACCS. Additionally, the court heard testimony from child abuse expert Michele Papai, psychologist Rhonda Lilley, Ph.D., guardian ad litem Marilyn Neason, and foster parent Susan Bennett-Wolfe.
 {¶ 7} The court granted ACCS's motion for permanent custody of Benjerman, General, and Mitchell. West filed a motion for a new trial, asserting that newly discovered evidence in the form of ACCS case notes regarding the foster parent's treatment of the children. The trial court denied West's motion. West appeals, asserting the following assignments of error: "1. Mother's complete compliance with the case plan developed by [ACCS] precludes the termination of Mother's parental rights. 2. Information of the children's mistreatment by their foster parents obtained after completion of the permanent custody hearing required the trial court to grant Mother's motion for a new trial."
 II. {¶ 8} In her first assignment of error, West contends that the trial court erred when it terminated her parental rights despite the fact that she complied with the ACCS reunification case plan. In particular, West contends that the record cannot clearly and convincingly support that granting permanent custody to ACCS is in her children's best interest, because the record shows that West complied with the ACCS case plan. ACCS contends that a parent's compliance with a case plan does not entitle the parent to reunification if the parent has not also rectified the conditions that caused the child's removal.
 {¶ 9} A permanent custody determination made pursuant to R.C.2151.414 must be supported by clear and convincing evidence. In re BabyGirl Doe, 149 Ohio App.3d 717, 738, 2002-Ohio-4470, at ¶ 89; In reHiatt (1993), 86 Ohio App.3d 716, 725. We will not reverse a trial court's order terminating parental rights if, upon a review of the record, we can find that the record contains sufficient evidence to satisfy the clear and convincing standard. Baby Girl Doe at ¶ 89; Inre Wise (1994), 96 Ohio App.3d 619, 626. The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally utilized in civil cases but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases. Baby Girl Doe at ¶ 89, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74.
 {¶ 10} We will not substitute our own judgment for that of a trial court applying a "clear and convincing evidence" standard where some competent and credible evidence supports the trial court's factual findings. Schiebel; C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. The trial court's discretion in making the final determination should be given "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Alfrey, Montgomery App. No. 01CA0083, 2003-Ohio-608, at ¶ 102, citing Miller v. Miller (1988),37 Ohio St.3d 71, 74.
 {¶ 11} R.C. 2151.414(B)(1)(d) provides in part that the court may grant permanent custody to an agency if it is in the child's best interest and "[t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." West does not dispute that her boys have been in ACCS's temporary custody for more than twelve months of the past twenty-two months.
 {¶ 12} To determine whether it is in a child's best interest to terminate parental rights, the court shall not consider the effect that granting permanent custody to the agency will have on the parent. R.C.2151.414(C). Among the factors that the court must consider are: (1) the child's interaction and relationships with parents, siblings, and other care-givers; (2) the child's wishes, as expressed by the child or through the child's guardian ad litem; (3) the child's custodial history, including whether the child has been in custody for twelve of more of a twenty-two month period; (4) the child's need for and the parent's ability to provide a legally secure placement; and (5) whether parents have been convicted of certain crimes, have failed to provide food or medical attention to their children, or have abandoned their children. R.C. 2151.414(D). The court also shall consider any other relevant factors. Id.
 {¶ 13} In this case, the trial court carefully enumerated each of the R.C. 2151.414(D) factors for determining the best interests of the children and made specific factual findings with regard to each. First, with regard to the children's interaction and relationship with their parents and other caregivers, the court found that the children have no relationship with their fathers and an unacceptable relationship with their mother. Dr. Lilley's testimony in particular supports this finding regarding West. Dr. Lilley testified that West continually chooses to engage in relationships that expose her children to violence and risk for abuse. According to Dr. Lilley, West has dependant personality disorder and cognitive limitations which create ongoing difficulties in putting her children's needs before her own, in meeting her children's developmental needs, and in creating a stable environment for the children. Ms. Papai, a child abuse expert, testified that Mitchell and Benjerman show signs of being sexually abused by West, West's former live-in boyfriend, and West's siblings.
 {¶ 14} Also pertaining to the first factor, with regard to other relationships in the children's lives, the court noted that West has introduced a string of men into her children's lives, including a man who beat her in front of her children, and two men who courts have convicted of sexually molesting children. West allowed the second of these two sex offenders to live with her children for nearly a month after ACCS informed her of his criminal history, at which point ACCS obtained an emergency temporary custody order. Even then, West continued to live with the sex offender for approximately four months, rather than seek to comply with the case plan and regain custody of her children. The relationship ended only after the man was put in jail for trying to run over someone with West's car.
 {¶ 15} As to the second factor, the children's wishes as expressed by the children or through the children's guardian ad litem, the trial court found that the children do not wish to be reunited with their mother. Ms. Papai testified that Mitchell does not feel that his mother can protect him from the men who have sexually abused him. The children's guardian ad litem, Marilyn Neason, testified that the children wish for someone to adopt them.
 {¶ 16} The third factor is the custodial history of the children. The parties do not dispute that the children have been in the custody of ACCS for more than twelve of a consecutive twenty-two month period ending on or after March 18, 2003. Additionally, the parties do not dispute that the children have never had a custodial relationship with their respective fathers. The trial court also noted that West's history of caring for her children is so sporadic that she had to guess at her children's ages, and she guessed wrong.
 {¶ 17} Fourth, the trial court found that the children need a legally secure placement due to their special needs. Specifically, the record contains evidence that the children have diagnosed mental, emotional and medical problems that require special care. The testimony of Dr. Lilley indicates that West is not equipped to provide the children with the special care they need, and that the children need a stable environment in order to address their difficulties.
 {¶ 18} Finally, the court noted that none of the remaining factors listed in R.C. 2151.414(E)(7) through (11) applied, except that all three boys were abandoned by their fathers.
 {¶ 19} We find that these factors, taken together, constitute some competent, credible evidence that granting permanent custody to ACCS is in the children's best interests. West argues that despite these findings, the fact that she complied with the ACCS reunification case plan proves that reunification is in her children's best interests. However, a parent's compliance with a reunification plan, without more, does not entitle a parent to custody. In Matter of McKenzie (Oct. 18, 1995), Wayne App. No. 95CA0015; In re Watkins and Harris v. Harris (Aug. 30, 1995), Summit App. No. 17068; see, also, In re Higby (1992),81 Ohio App.3d 466, 471. Although evidence regarding a parent's compliance with a case plan may be helpful in determining the proper placement for a child, the ultimate issue is the child's best interest. See R.C. 2151.414(B); McKenzie, supra.
 {¶ 20} Moreover, we note that even though West was in compliance with the case plan at the time of the permanent custody hearing, the evidence shows that she has not consistently complied with the case plan. Perhaps most significantly, West chose to allow a sex offender to live in her home, even after it became clear that her decision to do so would cost her temporary custody of her children. "The unfitness of the parent, guardian, or custodian can be predicted by past history." In reBishop (1987), 36 Ohio App.3d 123, 126. West's history of placing her children in harm's way outweighs her minimal, tardy efforts to comply with the case plan. Thus, even in light of West's ultimate compliance with the case plan, the record contains some competent, credible evidence supporting the trial court's determination that termination of her parental rights is in the children's best interests. Accordingly, we overrule West's first assignment of error.
 III. {¶ 21} In her second assignment of error, West contends that the trial court erred in denying her motion for a new trial based upon newly discovered evidence. Specifically, West contends that ACCS case notes that came into her possession after the hearing establish both mental and physical abuse by the foster parents. ACCS asserts that introduction of the notes at trial would not have changed the result of the trial and that the contents are immaterial to the court's determination regarding West's ability to parent her children. Additionally, ACCS argues that in any event West mischaracterizes the case notes, and that they do not establish mental and physical abuse.
 {¶ 22} The decision of whether to grant or deny a motion for new trial is committed to the sound discretion of the trial court. State v.Matthews (1998), 81 Ohio St.3d 375, citing State v. Schiebel (1990),55 Ohio St.3d 71, paragraph one of the syllabus. We will not reverse a trial court's denial of a motion for new trial absent an abuse of that discretion. Shark v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307. An abuse of discretion implies that a court's ruling is unreasonable, arbitrary, or unconscionable; it is more than an error in judgment. Stateex rel. Richard v. Seidner (1996), 76 Ohio St.3d 149.
 {¶ 23} "To warrant the granting of a motion for a new trial based on the ground of newly discovered evidence, it must be shown that (1) the new evidence must be such as will probably change the result if a new trial is granted, (2) it must have been discovered since the trial, (3) it must be such as could not in the exercise of due diligence have been discovered before the trial, (4) it must be material to the issues, (5) it must not be merely cumulative to former evidence, and (6) it must not merely impeach or contradict the former evidence." Sheen v. Kubiac
(1936), 131 Ohio St. 52, paragraph three of the syllabus. See, also,Payne v. Cartee (1996), 111 Ohio App.3d 580, 593-594 (applying Sheen
standard for determining motion for a new trial based upon newly discovered evidence in a juvenile proceeding.)
 {¶ 24} The newly discovered evidence West produced in this case consists of four pages of case notes. The case notes do not relate solely to the foster parents' relationship with the children. In fact, the first notation in the case notes reflects that West was incarcerated on April 21, 2003. The notes also describe the discipline methods used by the children's foster parents, including verbal reprimands, having to run laps around the yard, cleaning up after themselves, and being grounded. The interviews with Benjerman and General indicate that they like living with their foster parents. Mitchell's report states that the foster parents yell at him when he gets into trouble, and they tell him he's not dumb. The children report that their foster parents frequently use swear words.
 {¶ 25} The children's foster mother testified at trial. West did not question her regarding how she disciplines the children. The foster mother testified that she and her husband are not interested in adopting the children, but that she wants to assist in transitioning the children into a permanent home. Testimony from multiple witnesses at trial establishes that the children already had physical and emotional problems when they entered ACCS's temporary custody.
 {¶ 26} We find that the newly discovered evidence does not meet the requirements to allow for a new trial. The new evidence is not likely to change the result of the custody determination, because it does not impact the trial court's determination that West has demonstrated an inability or unwillingness to protect her children. The record is replete with evidence that the children's emotional problems stem from the time they spent in their mother's care, not in their foster parents' care. Moreover, the new evidence is immaterial. Because the ACCS seeks to place the children in a permanent adoptive home, and because the foster parents do not wish to adopt the children, the foster parents' discipline methods are not material to the children's best interests in the future.
 {¶ 27} Because the newly discovered evidence submitted by West is immaterial and would not have changed the result of the custody hearing if she had introduced it, we find that the trial court did not abuse its discretion in denying West's motion for a new trial. Accordingly, we overrule her second assignment of error, and we affirm the judgment of the trial court.
Judgment affirmed.
Harsha, J. and Abele, J., Concur in Judgment and Opinion.