DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Athens County Common Pleas Court, Juvenile Division, judgment that awarded Athens County Children Services (ACCS) permanent custody of K.J., born November 18, 2005.
 {¶ 2} Appellant Jamie Lehman, the child's natural mother, raises the following assignment of error for review:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FINDING THAT IT WAS IN THE CHILD'S BEST INTEREST UNDER R.C. 2151.414(D) FOR PERMANENT CUSTODY TO BE GRANTED TO ATHENS COUNTY CHILDREN SERVICES."
 {¶ 3} On November 7, 2006, ACCS removed the child from her parents' home *Page 2 
due to domestic violence. When law enforcement officers responded to the domestic violence complaint, they discovered the less than one-year-old child alone and unattended. The officers arrested appellant for child endangerment.
 {¶ 4} On November 8, 2006, ACCS filed a complaint and alleged the child to be neglected and dependent. ACCS further sought emergency custody, which the trial court subsequently granted. On January 19, 2007, the court, by agreement of the parties, adjudicated the child a dependent child, dismissed the neglect allegation and placed the child in ACCS's temporary custody. ACCS placed the child with appellant's aunt and uncle, where she remains to the present day.
 {¶ 5} On January 18, 2008, ACCS filed a motion to modify the disposition to permanent custody. At the hearing, ACCS presented evidence to show that both parents have a history of drug and alcohol abuse and are convicted felons. Appellant was convicted of assaulting a police officer in January of 2008. She received a thirty-one day jail sentence and five years of community control. In July 2007, law enforcement officers arrested appellant for punching the child's father, and in October of 2007, officers arrested her for intoxication. ACCS presented evidence that appellant failed to complete all case plan goals to maintain employment, to obtain independent housing, and to follow her counselors' recommendations.
 {¶ 6} On May 27, 2008, the trial court awarded ACCS permanent custody. The court determined that awarding ACCS permanent custody would serve the child's best interests. Regarding the child's interactions and interrelationships, the court stated:
 "The [child] was weeks from her first birthday when removed from mother's custody. [The child] has no siblings. Both parents have felony convictions and both have been in jail, prison, or both during the life of this *Page 3 
case. Mother remains on community control. Mother has maintained contact with her daughter through visitation while father last visited his daughter in July of 2007. There is a significant history of domestic violence between these parents yet they both still plan to remain a couple.
 Mother is diagnosed with Borderline Personality Disorder and Post Traumatic Stress Disorder. She also has a serious history of substance dependency. Father has a substantial history of drug and alcohol abuse. There is no history of stable housing, and only father appears employable as mother has applied for SSI."
 {¶ 7} With respect to the child's wishes, the court found that the child was too young to express her wishes. Regarding the child's custodial history, the court explained:
 "This child was living with mother when removed by Court order on November 8, 2006. On January 22, 2007, she was adjudicated dependent by agreement. Temporary custody was granted to ACCS as part of the disposition. * * *
 During this entire time period the [child] remained in the temporary custody of ACCS and lived in the same kinship care home."
 {¶ 8} Regarding the child's need for a legally secure placement, the court found:
 "This child needs and deserves a safe and legally secure placement which can only be accomplished by a grant of permanent custody to ACCS. The kinship provider with whom [the child] is placed is interested in petitioning the Probate Court for adoption. [The child] is appropriately bonded with this family and, in part, because of her age, there are no anticipated negatives to such an arrangement.
 The biological parents have been unsuccessful in meaningfully addressing their many problems * * * . `Loving' this child is not a substitute for parenting."
The court additionally found that the child has been in ACCS's temporary custody for twelve or more months of a consecutive twenty-two month period. The court thus awarded ACCS permanent custody. This appeal followed.
 {¶ 9} In her sole assignment of error, appellant asserts that the trial court erred *Page 4 
by finding that the permanent custody award will serve the child's best interests. She also contends that she substantially complied with the case plan and that she is able to appropriately care for her child.
 A STANDARD OF REVIEW {¶ 10} Initially, we note that an appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment. In re Perry, Vinton App. Nos. 06CA648 and 06CA649, 2006-Ohio-6128, at ¶ 40, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. Thus, our review of a trial court's permanent custody decision is deferential. See In re Hilyard, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, 05CA609, at ¶ 17. Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Schiebel, 55 Ohio St.3d at 74. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger *Page 5 
(1997), 77 Ohio St.3d 415, 419, 674 N.E.2d 1159; see, also, In reChristian, Athens App. No. 04CA10, 2004-Ohio-3146.
 B STANDARD FOR GRANTING PERMANENT CUSTODY {¶ 11} A trial court may not grant a permanent custody motion absent clear and convincing evidence to support the judgment. The Ohio Supreme Court has defined "clear and convincing evidence" as:
 "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; see, also, Schiebel, 55 Ohio St.3d at 74. In reviewing whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74.
 C PERMANENT CUSTODY PRINCIPLES {¶ 12} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential"
 {¶ 13} and "basic civil right" to raise his or her children.Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388,71 L.Ed.2d 599; In re Murray (1990), 52 Ohio St.3d 155, 156, 556 N.E.2d 1169; see also, In re D.A., 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. See DA, at *Page 6 
¶ 11. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In reCunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (quotingIn re R.J.C. (Fla.App.1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when a child's best interest demands such termination. D.A., at ¶ 11.
 {¶ 14} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1). Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
 (A) To provide for the care, protection, and mental and physical development of children * * *;
 * * *
 (B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
 D PERMANENT CUSTODY FRAMEWORK {¶ 15} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or *Page 7 
private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 16} Thus, before a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests.
 {¶ 17} In the case sub judice, the trial court found that K.J. has been in ACCS's custody for more than twelve months of a consecutive twenty-two month period. Because appellant does not dispute the court's finding, we do not address it. Instead, appellant's assignment of error focuses on the trial court's best interests finding.
 {¶ 18} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests will be served by granting a children services agency permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and *Page 8 
(5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[1] *Page 9 
 {¶ 19} In the case sub judice, the trial court considered the best interest factors and explained its reasoning. After our review, we believe that the record fully supports the trial court's findings. Regarding the child's interactions and interrelationships, the evidence shows that K.J. currently resides in a loving relative-placement home, where she refers to her great-aunt as "mommy." According to the great-aunt, K.J. is happy and well-adjusted, but displays "clingy" behavior following visits with appellant. Appellant expresses her love for the child, but has yet to obtain the necessary housing and income to properly provide for the child's needs. Furthermore, as of the March 18, 2008 permanent custody hearing date, appellant had not visited with K.J. since December 2007. *Page 10 
 {¶ 20} With respect to the child's wishes, the evidence shows that K.J. is too young to express her own wishes. However, we observe that the guardian ad litem recommended that the trial court award ACCS permanent custody.
 {¶ 21} Regarding the child's custodial history, K.J. has been in ACCS's continuous temporary custody since November 2006, when she was barely one-year old. Since that time, she has remained in the care of her great-aunt and great-uncle. Appellant thus had custody of the child for a little less than one year before ACCS obtained temporary custody.
 {¶ 22} With respect to the child's need for a legally secure permanent placement and whether that placement can be achieved without a grant of permanent custody, the evidence shows that the child's parents have not been able, or willing, to provide a legally secure permanent placement for the child. They have not obtained independent, stable housing. Appellant has not obtained employment or secured other income to properly care for the child. The child obviously needs and deserves a stable home environment. Despite ample opportunity, the parents have failed to obtain an adequate, stable home for the child.
 {¶ 23} With respect to the fifth best interest factor, whether any of the factors in R.C. 2151.414(E)(7) to (11) apply, the court found none applicable. Based upon a balancing of the best interest factors, we cannot say that the trial court erred by awarding ACCS permanent custody.
 {¶ 24} Appellant's complaint that her alleged substantial compliance with the case plan means that awarding ACCS permanent custody would not serve the child's *Page 11 
best interests is without merit. While appellant may have attended most of the required counseling sessions, she did not fulfill the case plan goal to maintain independent, stable housing for the child. Moreover, the evidence shows that appellant did not always follow the recommendations of her counselors. Although appellant exercised most of her scheduled visitation with the child through December 2007, the evidence demonstrates that appellant failed to take the necessary steps to ensure that she could provide an adequate safe and stable home for the child. Moreover, when considering a R.C. 2151.414(D)(1)(d) permanent custody motion, the focus is upon the child's best interests, not upon the parent's compliance with the case plan. See In re West, Athens App. No. 03CA20, 2003-Ohio-6299. However, we also recognize that a parent's compliance with the case plan may impact the child's best interests.
 {¶ 25} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Kline, J.: Concur in Judgment Opinion
[1] R.C. 2151.414(E)(7) to (11) provide as follows:
 (7) The parent has been convicted of or pleaded guilty to one of the following:
 (a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 (b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 (c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 (e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412
[2151.41.2] of the Revised Code.
 (10) The parent has abandoned the child.
 (11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child. that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense[.] *Page 1