OPINION
{¶ 1} Appellant-mother, K.B. ("appellant" or "mother"), appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating her parental rights and awarding permanent custody of her *Page 2 
two sons, D.C. and J.C., to Franklin County Children Services ("FCCS" or "agency"). For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On April 22, 2005, FCCS filed a complaint alleging that D.C. and J.C. were abused, neglected and dependent children. The complaint included allegations regarding a substantiated neglect case in 2003, along with allegations of physical abuse to both children, including bruising on their faces, ears, chests, backs, and arms. The injuries were alleged to have been caused by appellant's boyfriend, B. W. An emergency order of custody was granted to FCCS on the date the complaint was filed. The next day, a temporary order of custody was granted to FCCS.
 {¶ 3} This case was dismissed and re-filed on July 21, 2005. The allegations in the second complaint mirrored those in the original complaint. On July 22, 2005, a temporary order of custody was granted to FCCS. On October 11, 2005, D.C. and J.C. were adjudicated to be abused children. Temporary custody was granted to FCCS. A case plan was approved and adopted. Reunification was included as part of the case plan.
 {¶ 4} On June 12, 2007, FCCS filed a motion for permanent custody, alleging the following: that the children could not and should not be placed with the parents;[1] the children were abandoned;[2] and the children had been in the custody of FCCS for 12 or more months of a consecutive 22-month period.
 {¶ 5} A trial was held on September 30 and October 1, 2008. The father of D.C. and J.C. was not present, although his counsel was present and did participate in *Page 3 
questioning. Appellant was present and was represented during the trial. Appellant, as well as the FCCS caseworker and the lay guardian ad litem, testified during the trial.
 {¶ 6} The trial court found by clear and convincing evidence that it was in the best interest of the children to grant permanent custody to FCCS because the children had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period and, in the alternative, because the children cannot be placed with either of the parents within a reasonable time or should not be placed with the parents. Therefore, appellant's parental rights (as well as the father's) were terminated and permanent custody was awarded to FCCS. Appellant appeals, asserting a sole assignment of error for review:
 The trial court erred by finding that the agency made reasonable efforts to reunify the family, where the agency failed to enforce court-ordered visitation and family counseling.
 {¶ 7} Permanent custody judgments which are supported by some competent, credible evidence going to all essential elements of a case will not be reversed as being against the manifest weight of the evidence. In re Brofford (1992), 83 Ohio App.3d 869, 876-877. A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence.In re Andy-Jones, 10th Dist. No. 03AP-1167, 2004-Ohio-3312. In considering a trial court's decision to grant permanent custody to FCCS, this court must determine from the record whether the trial court had sufficient evidence before it. In re Brooks, 10th Dist. No. 04AP-164,2004-Ohio-3887. "`The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will *Page 4 
have on the lives of the parties concerned.'" In re Hogle (June 27, 2000), 10th Dist. No. 99AP-944, quoting In re Awkal (1994),95 Ohio App.3d 309, 316.
 {¶ 8} It is also "well recognized that the right to raise a child is an `essential' and `basic' civil right." In re Hayes (1997),79 Ohio St.3d 46, 48, citing In re Murray (1990), 52 Ohio St.3d 155, 157. "Permanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.'" In reHayes, at ¶ 48, quoting In re Smith (1991), 77 Ohio App.3d 1, 16. Accordingly, parents must receive every procedural and substantive protection the law permits. Id. "Because an award of permanent custody is the most drastic disposition available under the law, it is an alternative of last resort and is only justified when it is necessary for the welfare of the children." In re Swisher, 10th Dist. No. 02AP-1408, 2003-Ohio-5446 at ¶ 26, citing In re Cunningham (1979), 59 Ohio St.2d 100, 105.
 {¶ 9} A decision to award permanent custody requires the trial court to conduct a hearing and make a two-part finding. A trial court may grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that: (1) it is in the best interest of the child; and (2) that one of the following factors set forth under R.C. 2151.414(B)(1) applies: (a) the child cannot or should not be placed with the parents; (b) the child is abandoned; (c) the child is orphaned; or (d) the child has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1); In re C.F.,113 Ohio St.3d 73, 2007-Ohio-1104 at ¶ 23-27. Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. In re Abram, 10th Dist. No. 04AP-220, *Page 5 
2004-Ohio-5435. Clear and convincing evidence does not mean the evidence must be clear and unequivocal, nor does it require proof beyond a reasonable doubt. Id.
 {¶ 10} The plain language of R.C. 2151.414 clearly allows for the termination of parental rights without any finding that the children cannot be placed with either parent within a reasonable time, or should not be placed with either parent. Appellant's parental rights can lawfully be terminated upon a finding that the boys have been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period, and that it is in the best interest of the children to grant permanent custody to FCCS. R.C. 2151.414(B)(1)(d). See also In reBrooks, supra. Therefore, if this court affirms the finding that the children were in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period, makes a determination that reasonable efforts toward reunification were made, and affirms that it was in the best interest of the children to grant permanent custody to FCCS, it is unnecessary to determine whether the boys could be placed with appellant within a reasonable time.
 {¶ 11} As stated above, the agency must also prove by clear and convincing evidence that an award of permanent custody to FCCS is in the best interest of the child. R.C. 2151.414(B)(1). In determining the best interest, and pursuant to R.C. 2151.414(D)(1), the trial court is required to consider all relevant factors, including, but not limited to:
 (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; *Page 6 
 (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
 (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 12} Here, the trial court found the date on which FCCS obtained temporary custody of D.C. and J.C. to be June 21, 2005. The motion for permanent custody was filed June 12, 2007. Therefore, the trial court found both boys were under the temporary custody of FCCS for 12 or more months of a consecutive 22-month period. Appellant does not dispute this fact.
 {¶ 13} However, appellant disputes that the agency made a reasonable effort to reunify her with her children. Because she completed all aspects of the case plan, [3] with the exception of the family counseling, which she could not complete because D.C. and J.C. refused to visit with appellant or to engage in family counseling and FCCS declined to compel the boys to attend the visitation or family counseling, appellant argues FCCS effectively abandoned reunification. Appellant argues that, pursuant to R.C. 2151.413(D)(3), an agency shall not file a motion for permanent custody under division (D) if reasonable efforts to return the child to his or her home are required under *Page 7 
R.C. 2151.419 and the agency has not provided the services required by the case plan to the parents of the child or to the child. R.C. 2151.413(D)(3)(b). "`Reasonable efforts'" are "`[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed.'" In re C.F., at ¶ 28, quoting Will L. Crossley, Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation (2003), 12 B.U.Pub.Int.L.J. 259, 260.
 {¶ 14} In the case of In re C.F., the Ohio Supreme Court determined that, by its terms, R.C. 2151.419 only applies to hearings involving adjudicatory, emergency, detention, and temporary disposition hearings, along with dispositional hearings for abused, neglected, or dependent children. These types of hearings all occur prior to a decision transferring permanent custody to an agency. R.C. 2151.419 makes no reference to a hearing held on a motion for permanent custody. Id. at ¶ 41. Therefore, the Ohio Supreme Court held that R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413, such as in the instant case. Id. at ¶ 42. However, the Ohio Supreme Court went on to find that the agency must still make reasonable efforts to reunify the family during the proceedings prior to the termination of parental rights. If the agency has not established that these efforts were made prior to the hearing on a motion for permanent custody, then such efforts must be demonstrated at the permanent custody hearing. Id. at ¶ 43. For this reason, we shall address the issues of reasonable efforts toward reunification, as well as the best interests of the children.
 {¶ 15} We find the record demonstrates that reasonable efforts toward reunification were made. *Page 8 
 {¶ 16} First, the court made reasonable efforts findings on several occasions. A reasonable efforts finding was made pursuant to the magistrate's order issued July 22, 2005, which granted temporary custody to FCCS. The magistrate's order stated that allowing the children to continue living in the home would be contrary to their welfare and that reasonable efforts had been made to prevent or eliminate the need for removal of the children from their home. In addition, on October 11, 2005, when the children were adjudicated to be abused children pursuant to the magistrate's decision, a reasonable efforts finding was also made. At that time, the children had been in the custody of FCCS for six months and continued to need placement with the agency, despite the efforts that were made toward reunification. The trial court also made reasonable efforts findings in its August 1, 2006 judgment entry and its January 23, 2007 judgment entry.
 {¶ 17} Second, the trial court made further reasonable efforts findings following the permanent custody hearing, as demonstrated by its Permanent Custody Judgment Entry filed October 15, 2008. The trial court questioned whether FCCS should have forced the children to visit their mother. (Permanent Custody Judgment Entry, at 4.) The trial court went on to find that D.C. and J.C. experienced overwhelming abuse and neglect for all of their lives prior to being removed from appellant's custody. The trial court noted that it was unusual, even for children who were victims of abuse and neglect, to vehemently refuse visitation with their mother. The trial court further found that FCCS' decision not to force the boys to have visitation with their mother was not unreasonable under the circumstances. (Permanent Custody Judgment Entry, at 4.) The trial court stated "[f]ailure by FCCS to effectuate visitation with mother was not a lack of diligence *Page 9 
considering their fear as result of their abuse and additional potential trauma from physically enforcing visitation." (Permanent Custody Judgment Entry, at 9.)
 {¶ 18} Third, the trial court also found that B.W. failed to timely complete the domestic violence classes required under the case plan and that the most important element in this case had continuously been the concern for physical abuse by B.W. (Permanent Custody Judgment Entry, at 7.)
 {¶ 19} Additionally, the agency prepared a case plan and offered services to meet the requirements of that case plan when the reunification efforts were taking place, including individual counseling for both appellant and the boys. The caseworker testified that the goal of the plan has always been that the boys would be reunified with their mother. (Tr. 112.) The trial court found the agency conducted reasonable case planning and made diligent efforts to assist appellant in remedying the problems that initially caused the children to be removed from the home. However, the trial court determined that appellant did not substantially remedy the abuse concern. (Permanent Custody Judgment Entry, at 7.)
 {¶ 20} These findings by the trial court are further supported by additional evidence in the record.
 {¶ 21} Appellant testified that she continues to live with B.W. and that she loves him. (Tr. 17, 55.) Appellant further testified that she believes "some things got blown way out of proportion[,]" with respect to the abuse alleged against B.W., although she does believe that he lost his temper. (Tr. 63.) This represents one example of why the abuse concern has not been substantially remedied. *Page 10 
 {¶ 22} Next, the caseworker testified that when she visited the boys at their foster home, which she or another caseworker generally did on a monthly basis, she regularly talked to the boys about visitation and counseling with mom and encouraged them to engage in that type of contact. (Tr. 131-132.) The caseworker testified that the boys attended individual counseling at Directions for Youth and that a counselor at that facility would also conduct family counseling. However, the caseworker also testified that the boys refused contact with mom and would refuse to go if they knew mom was going to be there. (Tr. 135-136.) She further testified that the boys' individual counselors have never recommended that they do the family counseling. (Tr. 167.)
 {¶ 23} The caseworker also testified that multiple people have spoken to the boys about visitation with the mother and about family counseling, including foster care workers, the counselors, and the caseworkers. They have all talked with the boys about trying to engage in some sort of contact, but the boys absolutely refuse. "[J.C.] shuts down when I start to bring up the subject of mom and won't even, I mean, he just refuses to talk to me." (Tr. 168.) When asked how the boys generally responded when the issue of family counseling was brought up, the caseworker testified: "They absolutely refuse. They said if they have to do that, they'll run away. They'll do this, they'll do that and they — they refuse to go." (Tr. 165.)
 {¶ 24} At one point, the agency even went so far as to "trick" or deceive the boys into a meeting with their mother. The boys believed they were only going to Safe Landings to discuss their report cards, but when they arrived, appellant was there for a visit. (Tr. 23.) *Page 11 
 {¶ 25} The caseworker also testified that a plan was implemented as a result of the boys refusing face-to-face contact and/or phone calls with mom. That plan involved writing letters, so appellant wrote a letter to the boys, but the boys never responded. (Tr. 137-138.)
 {¶ 26} When asked whether or not appellant had substantially remedied the conditions that caused the boys to be placed outside of the home, the caseworker testified: "No, I don't feel much has changed in the way of the structure in the home." (Tr. 138.) While the caseworker admitted that the boys' sister was returned to the home, she also pointed out that there were never any allegations of physical abuse involving the sister and she never had the same ongoing fears regarding safety that the boys experienced. (Tr. 138.)
 {¶ 27} When asked her opinion as to whether the boys' refusal to visit mom was simply an example of pre-teen boys "being brats and being obstinate," the caseworker responded, "No. I believe they have a lot more reasons for not wanting to visit other than just not feeling like it." (Tr. 193-194.) The caseworker testified that despite the passage of more than three-years, the boys still recall the abuse and do not feel that mom can protect them or keep them safe. (Tr. 194-195.) She also testified the boys have "a lot of trust issues with mother. They do not feel that she has protected them in the past. She's had chances before and they feel that she is not able to keep them safe and provide for them." (Tr. 131.)
 {¶ 28} Finally, the caseworker affirmed that in her opinion, based upon her experience, where a child displays an absolute refusal to have contact with a biological parent, and that refusal continues for a period of years, the appropriate response from *Page 12 
children's services is to have the child engaged in counseling and to follow "the guidance of those counselors as to what's emotionally and psychologically appropriate to require that child to do[.]" (Tr. 195-196) Because the counselors would not force the boys to engage in visitation or family counseling, the agency followed their lead.
 {¶ 29} We find the agency made reasonable efforts to resolve the threat to the children in order to permit the children to return home. In spite of this, those efforts were unsuccessful. Nevertheless, the agency has demonstrated reasonable efforts to remove the threat and reunify with the mother to the extent necessary to pursue permanent custody.
 {¶ 30} Although appellant does not specifically assign error to the trial court's determination that permanent custody is in the best interests of the children, we shall briefly address that element here.
 {¶ 31} Pursuant to R.C. 2151.414, the trial court found FCCS proved by clear and convincing evidence that it was in the best interests of the children to grant permanent custody to FCCS. We agree.
 {¶ 32} The trial court analyzed the relevant factors set forth in R.C. 2151.414(D) and determined that the boys were not bonded with appellant, but were bonded with their foster parents. The trial court considered the wishes of the children, expressed through the lay guardian ad litem, who testified that the boys have verbally informed her on more than one occasion that they do not want any contact with mom. (Permanent Custody Judgment Entry, at 6; Tr. 217-218.) The trial court also determined that the children needed a legally secure permanent placement and that such placement could only be achieved by granting custody to FCCS. Finally, the trial court found that the children had *Page 13 
been in the custody of FCCS for 12 or more months of a consecutive 22-month period. Therefore, the trial court properly considered the relevant factors and made the appropriate findings to determine that permanent custody with FCCS was in the best interests of the children.
 {¶ 33} We further note that both the guardian ad litem and lay guardian ad litem, as well as the caseworker stated that they believed permanent custody was in the best interest of the boys. We also point out the boys have only been in their mother's custody for seven months during the period spanning September 2003 (the date when they were first removed in the neglect case) to the date of the permanent custody hearing on September 30, 2008. Additionally, we note the caseworker confirmed the boys were diagnosed with Post Traumatic Stress Disorder and ADHD and that at least some of their symptoms have been attributed to the abuse they suffered. (Tr. 142, 184.)
 {¶ 34} The court is not required to address the issue of whether the boys could be placed with appellant within a reasonable time or should be placed with appellant under R.C. 2151.414(B)(1)(a) and 2151.414(E). However, in the interest of thoroughness, we briefly note that the trial court determined the factors listed under R.C. 2151.414(E)(1), (14), (15), and (16) were applicable.[4] The trial court determined: appellant has not substantially remedied the abuse concern and B.W. did not utilize domestic violence counseling resources; appellant allowed abuse or neglect against the boys and the seriousness, nature, or likelihood of recurrence makes their placement with her a threat to *Page 14 
their safety, given that they continue to fear and refuse visitation and custody with appellant; and the boys have a fear of living with their mother that their sister, who was returned to the home, does not have.
 {¶ 35} We agree that these findings are supported by the record as set forth above. Any one of these factors is sufficient grounds for the trial court to determine the children could not be placed with either parent within a reasonable time. In re C.F., at ¶ 50. We also note that we have already established the existence of appropriate findings regarding the components of reasonable efforts and best interests. Therefore, we affirm the trial court's determination that the children cannot be placed with appellant within a reasonable time or should not be placed with appellant in the foreseeable future.
 {¶ 36} For all of these reasons, we conclude the trial court did not err in granting permanent custody of D.C. and J.C. to FCCS. Appellant's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is hereby affirmed.
Judgment affirmed.
KLATT and TYACK, JJ., concur.
[1] We note that another sibling, T.C., has been returned to the home. She is not at issue in this appeal.
[2] This allegation applies only to the father of D.C. and J.C.
[3] We recognize that a parent's compliance with the case plan may impact the child's best interests. Therefore, we note that when considering a R.C. 2151.414(B)(1)(d) permanent custody motion, the focus is upon the child's best interests, not upon the parent's compliance with the case plan. See In re West, 4th Dist. No. 03CA20,2003-Ohio-6299, and In re K.J., 4th Dist. No. 08CA14,2008-Ohio-5227.
[4] The relevant factors considered by the trial court pursuant to R.C. 2151.414(E) are: (1) the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home; (14) the parent for any reason is unwilling to provide basic necessities or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect; (15) the parent has committed abuse or allowed the child to suffer neglect and the seriousness, nature, or likelihood of recurrence makes the child's placement with the parent a safety threat; and (16) any other relevant factor. *Page 1