[Cite as *In re T.B.*, 2022-Ohio-4734.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| In the Matter of: | : | |
| | : | Case No. 22CA15 |
| T.B. | : | |
| | : | |
| Adjudicated Dependent Child. | : | |
| | : | |
| | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| | : | |
| | : | **RELEASED: 12/20/2022** |

APPEARANCES:

Brian A. Smith, Fairlawn, Ohio, for Appellant.

Jeffrey C. Marks, Ross County Prosecutor, and Jennifer L. Ater, Ross County Assistant Prosecutor, Chillicothe, Ohio, for Appellee.

Wilkin, J.

{¶1} Appellant, the minor child's father, appeals a decision of the Ross County Court of Common Pleas, Juvenile Division, that placed his biological child, T.B., in the permanent custody of South Central Ohio Job and Family Services, Children's Division ("the agency").

{¶2} Appellant raises four assignments of error. First, he argues that the trial court's permanent custody decision is void, because he was not properly served with notice of the motion and of the hearing. Second, Appellant claims that trial counsel rendered ineffective assistance of counsel by failing to object to the alleged lack of proper service. Third, Appellant asserts that the trial court's permanent custody decision is against the manifest weight of the evidence, because the evidence fails to support the court's finding that placing the child in

the agency's permanent custody is in the child's best interest.  Last, Appellant

contends that the trial court's permanent custody decision is against the manifest

weight of the evidence, because the record fails to show that the agency used

reasonable efforts to reunify the family.

{¶3} After our review of the record and the applicable law, we do not find

any merit to Appellant's assignments of error.  Therefore, we affirm the trial

court's judgment.

FACTS AND PROCEDURAL BACKGROUND

{¶4} On February 10, 2020, the agency filed a complaint that alleged the

nearly three-year-old child is a dependent child and requested the court to grant

the agency temporary custody of the child.  The attached statement of facts

indicated the following.

{¶5} The agency first became involved with the family in early June 2017,

shortly after the child's birth.  The agency learned that the child's "cord stat result

returned positive on [June 5, 2017] for Subutex and cocaine."  The report stated

that the child's mother had been receiving Subutex services during her

pregnancy but was discharged for testing positive for cocaine.

{¶6} A caseworker phoned the parents' home on August 9, 2017, and

heard the parents yelling.  The caseworker called the Chillicothe Police

Department to report the disturbance.  After the police left the parents' home,

Appellant informed the caseworker that the mother "left the residence out of a

window of the home before police arrived."  Appellant advised the caseworker

"that he was not able to ensure [the mother] would not bring drug instruments

into the home, or that he could stop the drug activity, dealers, and other users from coming into the home." He further stated that "working full time and providing care to [the child] was too difficult to him." Shortly thereafter, the agency sought and received temporary custody of the child.

{¶7} Over the next couple of years, the agency worked with the parents in an attempt to reunify the family. The parents, however, did not consistently visit the child or comply with the case plan requirements. The agency eventually dismissed the original complaint and refiled the present action.

{¶8} On February 12, 2020, the father appeared with counsel for a hearing. At this hearing, the father denied the allegations of the complaint. The court found that the agency had used reasonable efforts to prevent the child's continued removal from the home. The court continued the child in the agency's temporary custody.

{¶9} On July 29, 2020, the magistrate adjudicated the child a dependent child. The court found that the agency used reasonable efforts. On that same date, the trial court adopted the magistrate's decision and adjudicated the child a dependent child. The court later entered a dispositional order that continued the child in the agency's temporary custody.

{¶10} On February 8, 2022, the agency filed a permanent custody motion. The agency alleged that the child has been in its temporary custody for 12 or more months of a consecutive 22-month period and that placing the child in its permanent custody is in his best interest. The agency requested that both parents be served via personal service.

{¶11} About one month later, the trial court held a pretrial hearing and noted that Appellant's counsel appeared, but Appellant did not. The court further observed that the record did not indicate that the parents had been served with notice of the permanent custody motion and of the hearing date. The court thus ordered the agency to verify that the parents have been served or to issue new instructions for service.

{¶12} On March 15, 2022, the agency filed a motion to serve the parents by posting and by mail. The affidavit stated that the summons could not be served upon the parents because their residence is "unknown." The affidavit listed the parents' last known address and stated that reasonable efforts (a public records search) were undertaken to determine the parents' residence.

{¶13} On April 11, 2022, the court held a hearing to consider the agency's permanent custody motion. The court noted that neither parent was present but that an attorney represented each. Caseworker Sarah Swenson testified that the agency's concerns included the parents' lack of appropriate housing and lack of employment, and the mother's drug addiction. Additionally, Appellant did not have reliable transportation and had "explosive angry outbursts in front of the child."

{¶14} Swenson explained that the case plan required the mother to continue receiving treatment for her drug addiction and required the parents to maintain safe and stable housing, to attend regular visitation with the child, and to engage in a mental health evaluation and follow any recommended treatment. Swenson testified that the parents did not establish stable housing, did not

consistently visit the child, and Appellant did not successfully complete recommended counseling for his anger issues.

{¶15} Swenson stated that the parents "were very inconsistent" in their visits with the child.  Swenson reported that in June 2021, the parents "had a hard time keeping appointments."  She explained that the parents claimed not to have transportation, or they complained about the weather or the time scheduled for the visits.  Swenson stated that the agency moved the visits to a more accommodating time for the parents, yet the parents still did not consistently visit the child.  Around August 2021, the parents' visits became even less consistent, and they "stopped showing up almost completely."   Furthermore, during visits, Appellant "tended to yell in front of [the child] and scare him" and was confrontational with the foster parents.

{¶16} Swenson stated that the child has been in the agency's temporary custody since he was a few months old and that he has remained in the same foster home throughout that time.  Swenson reported that the child is "very comfortable," "very well adjusted," and "very bonded" with the foster family.  She further explained that due to Appellant's violent behaviors, the child was referred for counseling.

{¶17} Caseworker Nathan Winston stated that he is the current caseworker for the family.  Winston testified that the parents have not completed the case plan goals.  Winston reported that neither parent visited the child between August 2021 and early December 2021.  Appellant attended a visit on December 7, 2021, but he has not seen the child since that time.  The mother

last visited the child in August 2021.  Winston also stated that the parents have not established stable housing and that Appellant has not resolved his anger issues.  Winston indicated that the child is "very bonded" with the foster family and "has a strong love for them."

{¶18} On April 13, 2022, the trial court granted the agency permanent custody of the child.  The court found that all parties were properly notified of the hearing.  The court determined that the child cannot be placed with either parent within a reasonable time or should not be placed with them and that placing the child in the agency's permanent custody is in the child's best interest.  The court additionally found that the child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period and "has essentially been" in the agency's temporary custody "since a few days after he was born."  The court observed that the child shares a strong bond with the foster parents and is doing well in their care.

{¶19} The court stated that the parents did not complete "significant portions of the case plan."  The mother has been unable to overcome her drug addiction, is on felony probation, and has a bench warrant for her arrest. Appellant did not consistently visit the child and has not seen the child since December 7, 2021.  During visits, Appellant "was often confrontational with the foster parents and acted in an aggressive manner."  Furthermore, Appellant's "outbursts have frightened the child."  Appellant "was referred to counseling to address his outbursts but he has failed to follow through with that counseling referral."

{¶20} The court also noted that Appellant "has not consistently remained in contact with his case workers" and that the "parents have not maintained stable housing." Moreover, the parents have a history of domestic violence, and they have not adequately addressed the concerns. The court determined that the child needs a permanent placement and cannot achieve that type of placement without granting the agency permanent custody of the child. The court thus granted the agency permanent custody of the child. This appeal followed.

ASSIGNMENTS OF ERROR

I.   THE TRIAL COURT DECISION GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY WAS VOID, BECAUSE IT DENIED DUE PROCESS TO APPELLANT DUE TO INSUFFICIENT SERVICE, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

II.  THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO OBJECT TO THE TRIAL COURT'S IMPROPER SERVICE AND LACK OF JURISDICTION OVER APPELLANT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND VIOLATED APPELLANT'S RIGHTS TO COUNSEL AND DUE PROCESS UNDER ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

III. THE TRIAL COURT'S RULING, GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY, WAS AGAINST THE MANFEST WEIGHT OF THE EVIDENCE.

IV.  THE TRIAL COURT'S RULING, GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, BECAUSE APPELLEE DID NOT SHOW THAT IT HAD MADE "REASONABLE EFFORTS" TO REUNITE THE FAMILY PURSUANT TO R.C. 2151.419.

ANALYSIS

FIRST ASSIGNMENT OF ERROR

{¶21} In his first assignment of error, Appellant argues that the trial court's permanent custody decision is void because he was not properly served with the agency's permanent custody motion or notice of the hearing date. Specifically, he contends that the agency failed to establish that serving him with notice by publication was necessary. Appellant alleges that the agency incorrectly claimed that the agency could not ascertain his address. Appellant asserts that he had maintained the same address since the inception of the case and that the complaint had been served upon him at this address. He also argues that the clerk's office should not have sent notice via regular mail, but instead, should have sent notice via certified mail.

{¶22} The Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, provides: "No person shall * * * be deprived of life, liberty, or property, without due process of law." "[P]arents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by this Court.' " *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Indeed, the right to raise one's "child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990); *accord In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d

599 (1982) (stating that "natural parents have a fundamental right to the care and custody of their children"). Thus, "parents who are 'suitable' have a 'paramount' right to the custody of their children." *B.C.* at ¶ 19, quoting *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977), citing *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877); *Murray*, 52 Ohio St.3d at 157.

{¶23} Additionally, the Ohio Supreme Court has described the permanent termination of parental rights as " 'the family law equivalent of the death penalty in a criminal case.' " *Hayes*, 79 Ohio St.3d at 48, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). Consequently, courts must afford parents facing the permanent termination of their parental rights " 'every procedural and substantive protection the law allows.' " *Id.*, quoting *Smith* at 16; *accord B.C.* at ¶ 19. Thus, because parents possess a fundamental liberty interest in the care and custody of their children, the state may not deprive parents of their parental rights without due process of law. *In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 16; *e.g.*, *In re A.G.*, 4th Dist. Athens No. 14CA28, 2014-Ohio-5014, ¶ 12; *In re M.H.*, 4th Dist. Vinton No. 11CA683, 2011-Ohio-5140, ¶¶ 49–50. Moreover, a parent's right to due process "does not evaporate simply because" that parent has "not been [a] model parent[ ] or [has] lost temporary custody of their child to the State." *Santosky*, 455 U.S. at 753.

{¶24} Although "due process" lacks precise definition, courts have long held that due process requires both notice and an opportunity to be heard. *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 12, citing

*Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701, 708, 4 S.Ct. 663, 28 L.Ed. 569 (1884); *Caldwell v. Carthage*, 49 Ohio St. 334, 348, 31 N.E. 602 (1892).  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *accord In re Thompkins* at ¶ 13.

{¶25} Moreover, given the importance of the parent-child bond, "a Juvenile Court cannot make a valid order changing temporary commitment of a dependent child to a permanent one without a service of notice upon the parent of the child, strictly in accordance with the law."  *In re Frinzl*, 152 Ohio St. 164, 173, 87 N.E.2d 583 (1949); *accord In re S.S.*, 9th Dist. Wayne No. 10CA0010, 2010-Ohio-6374, ¶ 43, quoting *In re Cowling*, 72 Ohio App.3d 499, 500–501, 595 N.E.2d 470 (9th Dist.1991).  " '[A] judgment rendered without proper service or entry of appearance is a nullity and void.' "  *State ex rel. Ballard v. O'Donnell*, 50 Ohio St.3d 182, 183–184, 553 N.E.2d 650 (1990), quoting *Lincoln Tavern, Inc. v. Snader*, 165 Ohio St. 61, 64, 133 N.E.2d 606 (1956).  Thus, "a valid court judgment requires both proper service under the applicable Ohio rules and adequate notice under the Due Process Clause."  *In re A.G.*, 4th Dist. Athens No. 14CA28, 2014-Ohio-5014, ¶ 14, citing *Samson Sales, Inc. v. Honeywell, Inc.*, 66 Ohio St.2d 290, 293, 421 N.E.2d 522 (1981).

**{¶26}** When, however, "parents of minor children have the notice and opportunity to assert their rights in a permanent-custody proceeding," no due process violation occurs. *Ross v. Saros*, 99 Ohio St.3d 412, 2003-Ohio-4128, 792 N.E.2d 1126, ¶ 17. Accordingly, "a notice issue may be waived on appeal when a parent's attorney is present for various permanent custody hearings and does not raise the improper notice issue." *In re C.B.*, 2020-Ohio-5151, 161 N.E.3d 770, ¶ 19 (4th Dist.).

**{¶27}** When the state seeks to interfere with a parent's liberty interest in the care, custody, and management of his or her child, the Due Process Clause requires the state to "*attempt* to provide actual notice" to the parents. *Thompkins* at ¶ 14 (emphasis sic.), citing *Dusenbery v. United States*, 534 U.S. 161, 170, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002). Due process does not, however, require the state to undertake " 'heroic efforts' " to provide actual notice. *Id.*, quoting *Dusenbery*, 534 U.S. at 170. Additionally, due process does not require that a parent receives actual notice before the state may permanently sever the parent-child relationship. *Id.* Instead, the state satisfies its due process obligation to provide notice and an opportunity to be heard if the state employs means that are "reasonably calculated" to inform the parent of the proceeding involving his or her child. *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 64. Furthermore, the state must exercise "reasonable diligence in attempting to notify [parents] that [their] parental rights [are] subject to termination." *Thompkins* at ¶ 15; *accord In re S.S.*, 9th Dist. Wayne No. 10CA0010, 2010-Ohio-6374, ¶ 49.

{¶28} R.C. 2151.29 sets forth the requirements for serving notice of a permanent custody motion and of the hearing. See R.C. 2151.414(A)(1) (stating that "the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with" R.C. 2151.29). The statute provides as follows:

> Service of summons, notices, and subpoenas, prescribed by section 2151.28 of the Revised Code, shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at the person's usual place of residence. If the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail. If the person to be served is without the state but the person can be found or the person's address is known, or the person's whereabouts or address can with reasonable diligence be ascertained, service of the summons may be made by delivering a copy to the person personally or mailing a copy to the person by registered or certified mail.

> Whenever it appears by affidavit that after reasonable effort the person to be served with summons cannot be found or the person's post-office address ascertained, whether the person is within or without a state, the clerk shall publish such summons once in a newspaper of general circulation throughout the county. The summons shall state the substance and the time and place of the hearing, which shall be held at least one week later than the date of the publication. A copy of the summons and the complaint, indictment, or information shall be sent by registered or certified mail to the last known address of the person summoned unless it is shown by affidavit that a reasonable effort has been made, without success, to obtain such address.

> A copy of the advertisement, the summons, and the complaint, indictment, or information, accompanied by the certificate of the clerk that such publication has been made and that the summons and the complaint, indictment, or information have been mailed as required by this section, is sufficient evidence of publication and mailing. When a period of one week from the time of publication has elapsed, the juvenile court shall have full jurisdiction to deal with such child as provided by sections 2151.01 to 2151.99 of the Revised Code.

{¶29} In the case before us, Appellant claims that service by publication was improper because the agency could have ascertained his address. He states that he had maintained the same address at which the agency previously had served him and that the agency thus should have attempted to serve him at this address. We observe, however, that on February 8, 2022, the agency did request personal service be made upon Appellant at this address.

{¶30} Moreover, about one month later, the trial court noted that the record did not indicate that the parents had been served with notice of the motion and hearing date.[1] The court thus ordered the agency to verify that the parents have been served or to issue new instructions for service.

{¶31} One week later, the agency filed a motion to serve the parents by posting and by mail. The agency submitted an affidavit for publication by posting and mail that contained the parents' last known address, that stated the agency had used reasonable efforts to determine the parents' residence by conducting a public records search, and that averred that the parents' residence could not be ascertained with reasonable diligence. The trial court granted the agency's motion.

{¶32} Here, the agency first attempted to personally serve Appellant with notice of the motion and hearing at the same address that Appellant had maintained throughout the pendency of the case. After about one month, the agency still had not successfully personally served Appellant. The agency then

---

[1] On February 14, 2022, the Sheriff's Returns were filed with the court, but they are blank; none of the information was completed on the form to indicate whether service had or had not been made.

requested the clerk's office to serve Appellant by posting and by ordinary mail, which the clerk's office did.

**{¶33}** Appellant contends, however, that the clerk also should have sent notice via certified mail to his last known address and that the failure to do so shows that service by publication was not properly made upon him. Yet at no point did Appellant's counsel, who appeared at both the pretrial and the permanent custody hearing, assert that the attempt to serve Appellant was invalid. Instead, Appellant's counsel appeared at the permanent custody hearing and did not argue that service was defective. Therefore, Appellant waived the issue for purposes of appeal. *In re D.H.*, 177 Ohio App.3d 246, 2008-Ohio-3686, 894 N.E.2d 364 (8th Dist.), ¶ 38 (stating that the "issue of notice is waived on appeal when the parent's attorney is present for various permanent custody hearings and never argues improper notice"); *Matter of Jennifer L.*, 6th Dist. Lucas No. L-97-1295, 1998 WL 230808, *3 (May 1, 1998) (determining that father waived argument that trial court lacked personal jurisdiction "when counsel who appeared on his behalf at the permanent custody hearings did not argue that the trial court had no jurisdiction to consider a motion for permanent custody against him"); *see State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 36 (stating that a person "submits to the court's jurisdiction if he does not object to the court's exercise of jurisdiction over him"); *Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 114 Ohio St.3d 141, 2007-Ohio-3762, 870 N.E.2d 714, ¶ 13 (stating that a party voluntarily submits to a court's jurisdiction "by failing to raise the defense of insufficiency of service of process in a responsive

pleading or by filing certain motions before any pleading"). We additionally point out that when the agency filed its permanent custody motion, Appellant's child had been in the agency's temporary custody for about four and a half years. Thus, Appellant's claim that he did not have adequate notice of the proceedings rings especially hollow. Consequently, we do not agree with Appellant that the trial court's permanent custody decision is void.

{¶34} Accordingly, based upon the foregoing reasons, we overrule Appellant's first assignment of error.

SECOND ASSIGNMENT OF ERROR

{¶35} In his second assignment of error, Appellant asserts that his trial counsel was ineffective for failing to object to the allegedly improper service. Appellant claims that if trial counsel had raised the issue, then "the trial court would not have granted permanent custody to [the agency], and [Appellant]'s parental rights would not have been terminated."

{¶36} The right to counsel, guaranteed in permanent custody proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. *In re Wingo*, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist.2001), citing *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998); *e.g., In re J.P.B.*, 4th Dist. Washington No. 12CA34, 2013-Ohio-787, ¶ 23; *In re K.M.D.*, 4th Dist. Ross No. 11CA3289, 2012-Ohio-755, ¶ 60; *In re A.C.H.*, 4th Dist. Gallia No. 11CA2, 2011-Ohio-5595, ¶ 50. " 'Where the proceeding contemplates the loss of parents' 'essential' and 'basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in

criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody.' " *Wingo*, 143 Ohio App.3d at 666, quoting *Heston*.

{¶37} "To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial." *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 15, citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Powell,* 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.

{¶38} " 'In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.' " *State v. Adams*, 2016-Ohio-7772, 84 N.E.3d 155 ¶ 89 (4th Dist.), quoting *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. When considering counsel's performance, " 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Walters*, 4th Dist. Washington Nos. 13CA33, 13CA36, 2014-Ohio-4966, ¶ 23, quoting *Strickland,* 466 U.S. at 689. "Thus, 'the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *State v. Jarrell*, 2017-Ohio-520, 85 N.E.3d 175, ¶ 49 (4th Dist.), quoting *Strickland,* 466 U.S. at 689.

**{¶39}** To establish prejudice, a defendant must demonstrate that a reasonable probability exists that " 'but for counsel's errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine the outcome.' "  *Hinton v. Alabama*, 571 U.S. 263, 134 S.Ct. 1081, 1089, 188 L.Ed.2d 1 (2014), quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.  Furthermore, courts ordinarily may not simply presume the existence of prejudice but must require the defendant to affirmatively establish prejudice.  *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22.  As we have repeatedly recognized, speculation is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim.  *E.g., State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 68; *accord State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

**{¶40}** In the case at bar, we do not agree with Appellant that trial counsel provided ineffective assistance of counsel by failing to assert that Appellant had not been properly served with the permanent custody motion and notice of the hearing.  Even presuming that Appellant can establish that trial counsel performed deficiently by failing to raise the issue, Appellant cannot demonstrate

that the result of the proceeding would have been different if counsel had raised the issue. Instead, Appellant can only speculate that had counsel raised the issue, the trial court would not have placed the child in the agency's custody. We believe that the more likely scenario is that if the trial court had determined that Appellant had not been properly served, then the court would have continued the permanent custody hearing until proper service was obtained. Moreover, Appellant has not claimed that if the trial court had continued the hearing, (1) he would have appeared to testify, (2) he would have presented evidence that would have changed the result of the proceeding, or (3) he otherwise would have been able to allay the agency's concerns about placing the child in his care. Consequently, Appellant cannot show that any purported deficient performance affected the outcome of the proceedings. Therefore, Appellant cannot establish that trial counsel failed to provide ineffective assistance of counsel.

{¶41} Accordingly, based upon the foregoing reasons, we overrule Appellant's second assignment of error.

### THIRD ASSIGNMENT OF ERROR

{¶42} In his third assignment of error, Appellant contends that the trial court's decision to grant the agency permanent custody of the child is against the manifest weight of the evidence. He asserts that he "substantially complied with several conditions of the case plan." Appellant points out that a June 23, 2021 progress report notes that he and the mother were "actively looking for housing." He additionally states that he completed a mental health assessment and parenting classes and that he "submitted a negative drug screen on July 30,

2019." Appellant also argues that many of the issues that caused the agency concern resulted from the mother's actions and not from his actions.

STANDARD OF REVIEW

**{¶43}** Generally, a reviewing court will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *E.g., In re B.E.*, 4th Dist. Highland No. 13CA26, 2014-Ohio-3178, ¶ 27; *In re R.S.*, 4th Dist. Highland No. 13CA22, 2013-Ohio-5569, ¶ 29. When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist. 2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). We further observe, however, that issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice

inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *accord In re Christian*, 4th Dist. Athens No. 04CA 10, 2004-Ohio-3146, ¶ 7.

{¶44} The question that an appellate court must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43. "Clear and convincing evidence" is:

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23 (1986).

{¶45} In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *accord In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court,

the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.").

{¶46} Thus, if a children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence. *In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 62 (4th Dist.); *In re R.L.*, 2d Dist. Greene Nos. 2012CA32 and 2012CA33, 2012-Ohio-6049, ¶ 17, quoting *In re A.U.*, 2d Dist. Montgomery No. 22287, 2008-Ohio-187, ¶ 9 ("A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements * * * have been established.' "). A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175.

## PERMANENT CUSTODY PROCEDURE

{¶47} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the

agency.  R.C. 2151.414(A)(1).  Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151: "to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' "  *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 29, quoting R.C. 2151.01(A).

**{¶48}** R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and, as applicable here, "the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."  R.C. 2151.414(B)(1)(d).

### A.  R.C. 2151.414(B)(1)(d)

**{¶49}** In the case at bar, the trial court found that the child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period.  Appellant does not dispute the trial court's R.C. 2151.414(B)(1)(d) finding, so we do not address it.

### B.  BEST INTEREST

**{¶50}** R.C. 2151.414(D) directs a trial court to consider "all relevant factors," as well as specific factors, to determine whether a child's best interest will be served by granting a children services agency permanent custody.  The

listed factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's GAL, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶51} Deciding whether a grant of permanent custody to a children services agency will promote a child's best interest involves a delicate balancing of "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. However, none of the best interest factors requires a court to give it "greater weight or heightened significance." *Id.* Instead, the trial court considers the totality of the circumstances when making its best interest determination. *In re K.M.S.*, 3d Dist. Marion Nos. 9-15-37, 9-15-38, and 9-15-39, 2017-Ohio-142, ¶ 24; *In re A.C.*, 9th Dist. Summit No. 27328, 2014-Ohio-4918, ¶ 46. In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916, ¶ 66, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991).

{¶52} In the case at bar, we believe that the record contains ample, clear and convincing evidence to support the trial court's decision that placing the child in the agency's permanent custody is in his best interest. The record does not support a finding that the trial court committed a manifest miscarriage of justice. Therefore, the trial court's judgment is not against the manifest weight of the evidence.

### 1. Child's Interactions and Interrelationships

{¶53} The evidence shows that Appellant did not consistently visit the child and that he has not visited the child since December 7, 2021. When Appellant did attend visits, he had frequent outbursts during visitations, and these outbursts frightened the child.

{¶54} On the other hand, the foster family provides for the child's well-being, and the child appears to have a "strong bond" with the family.

### 2. Child's Wishes

{¶55} The guardian ad litem recommended that the court grant the agency permanent custody of the child. *In re I.A.-W.,* 8th Dist. Cuyahoga No. 111217, 2022-Ohio-1766, ¶ 37; *In re S.M.*, 4th Dist. Highland No. 14CA4, 2014–Ohio–2961, ¶ 32 (both recognizing that R.C. 2151.414 permits juvenile courts to consider a child's wishes as child directly expresses or through the guardian *ad litem*).

### 3. Custodial History

{¶56} The record shows that the child has been in the agency's temporary

custody since August 10, 2017, when he was barely two months old.  Since that time, the child has lived with the same foster family.

### 4.  Legally Secure Permanent Placement

**{¶57}**  "Although the Ohio Revised Code does not define the term, 'legally secure permanent placement,' this court and others have generally interpreted the phrase to mean a safe, stable, consistent environment where a child's needs will be met."  *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56, citing *In re Dyal*, 4th Dist. Hocking No. 01CA12, 2001 WL 925423, *9 (Aug. 9, 2001) (implying that "legally secure permanent placement" means a "stable, safe, and nurturing environment"); *see also In re K.M.*, 10th Dist. Franklin Nos. 15AP-64 and 15AP-66, 2015-Ohio-4682, ¶ 28 (observing that legally secure permanent placement requires more than stable home and income but also requires environment that will provide for child's needs); *In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶ 95 (stating that mother unable to provide legally secure permanent placement when she lacked physical and emotional stability and that father unable to do so when he lacked grasp of parenting concepts). Thus, "[a] legally secure permanent placement is more than a house with four walls.  Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs."  *In re M.B.* at ¶ 56.

**{¶58}** In the case at bar, the evidence shows that the child needs a legally secure permanent placement and that he cannot achieve this type of placement without granting the agency permanent custody.  The parents do not have a

stable home for the child and have not adequately resolved the concerns regarding domestic violence in the home. Moreover, neither parent maintained consistent communication with the agency caseworkers or demonstrated a consistent commitment to the child. The parents have not demonstrated that they have a stable environment where the child can live in safety with a dependable adult who will provide for the child's needs.

{¶59} Moreover, even if Appellant complied with some aspects of the case plan, as we have observed in the past, a parent's case plan compliance may be a relevant, but not necessarily conclusive, factor when a court considers a permanent custody motion. *In re B.P.*, 4th Dist. Athens No. 20CA13, 2021-Ohio-3148, ¶ 57; *In re T.J.*, 4th Dist. Highland No. 2016-Ohio-163, ¶ 36, citing *In re R.L.*, 9th Dist. Summit Nos. 27214 and 27233, 2014-Ohio-3117, ¶ 34 ("although case plan compliance may be relevant to a trial court's best interest determination, it is not dispositive of it"); *In re S.C.*, 8th Dist. Cuyahoga No. 102349, 2015-Ohio-2280, ¶ 40 ("Compliance with a case plan is not, in and of itself, dispositive of the issue of reunification"); *accord In re K.M.*, 4th Dist. Ross No. 19CA3677, 2019-Ohio-4252, ¶ 70, citing *In re W.C.J.*, 4th Dist. Jackson No. 14CA3, 2014-Ohio-5841, ¶ 46 ("[s]ubstantial compliance with a case plan is not necessarily dispositive on the issue of reunification and does not preclude a grant of permanent custody to a children's services agency"); *In re N.L.*, 9th Dist. Summit No. 27784, 2015-Ohio-4165, ¶ 35 ("substantial compliance with a case plan, in and of itself, does not establish that a grant of permanent custody to an agency is erroneous"). "Indeed, because the trial court's primary focus in a

permanent custody proceeding is the child's best interest, 'it is entirely possible that a parent could complete all of his/her case plan goals and the trial court still appropriately terminate his/her parental rights.' " *W.C.J.* at ¶ 46, quoting *In re Gomer*, 3d Dist. Wyandot Nos. 16-03-19, 16-03-20, and 16-03-21, 2004-Ohio-1723, ¶ 36; *accord In re K.J.*, 4th Dist. Athens No. 08CA14, 2008-Ohio-5227, ¶ 24 ("when considering a R.C. 2151.414(D)(1)(d) permanent custody motion, the focus is upon the child's best interests, not upon the parent's compliance with the case plan"). Thus, a parent's case plan compliance will not preclude a trial court from awarding permanent custody to a children services agency when doing so is in the child's best interest. *Id.*

{¶60} In the case sub judice, as we noted above, we believe that the record contains ample clear and convincing evidence that placing the child in the agency's permanent custody is in his best interests. Furthermore, contrary to Appellant's argument that he "substantially complied with several conditions of the case plan," the trial court specifically found that Appellant "did not complete significant portions of the case plan."

{¶61} Based upon all of the foregoing evidence, the trial court could have been firmly convinced that placing the child in the agency's permanent custody is in the child's best interest. Therefore, the court's judgment is not against the manifest weight of the evidence.

{¶62} Accordingly, based upon the foregoing reasons, we overrule Appellant's third assignment of error.

FOURTH ASSIGNMENT OF ERROR

{¶63} In his fourth assignment of error, Appellant argues that the trial court's decision is against the manifest weight of the evidence due to the agency's failure to establish that it used reasonable efforts to allow the child to be returned to the family's home. He alleges that the agency did not attempt to help him obtain childcare so that he would be able to maintain full-time employment. Appellant asserts that his inability to manage both full-time employment and taking care of the child was the primary obstacle to reunification and that the agency should have done more to help him. He also contends that the agency did not present sufficient evidence throughout the proceedings that it otherwise used reasonable efforts to reunify the family.

{¶64} When a trial court "removes a child from the child's home or continues the removal of a child from the child's home," R.C. 2151.419(A)(1) requires a trial court to determine whether a children services agency "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." "In determining whether reasonable efforts were made, the child's health and safety shall be paramount." R.C. 2151.419(A)(1). The agency bears the burden to prove that it has made reasonable efforts. R.C. 2151.419(A)(1).

{¶65} However, R.C. 2151.419(A)(1) applies only at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children * * *." *C.F., supra*, at ¶ 41;

*accord In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916, ¶ 72. Thus, " '[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414.' " *C.F.* at ¶ 41, quoting *In re A.C.*, 12th Dist. Clermont No. CA2004-05-041, 2004-Ohio-5531, ¶ 30. Nonetheless, "[t]his does not mean that the agency is relieved of the duty to make reasonable efforts" before seeking permanent custody. *Id.* at ¶ 42. Instead, at prior "stages of the child-custody proceeding, the agency may be required under other statutes to prove that it has made reasonable efforts toward family reunification." *Id.* Additionally, "[if] the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.* at ¶ 43.

{¶66} In the case sub judice, appellant's appeal does not emanate from one of the types of hearings specifically listed in R.C. 2151.419(A): "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children." The agency, therefore, did not have the burden to prove at the permanent custody hearing that it used reasonable efforts to reunify the family, unless it had not previously done so. Here, our review of the record reflects that the trial court made multiple reasonable efforts findings before the agency filed its permanent custody motion. Thus, the court did not need to again find that the agency used reasonable efforts before it could grant the agency permanent custody of the child. *E.g., In*

*re M.H.–L.T.*, 4th Dist. Washington No. 17CA12, 2017-Ohio-7825, ¶ 64; *In re*

*S.S.*, 4th Dist. Jackson Nos. 16CA7 and 16CA8, 2017-Ohio-2938, ¶ 168.

{¶67} Accordingly, based upon the foregoing reasons, we overrule

Appellant's fourth assignment of error.

## CONCLUSION

{¶68} Having overruled appellant's four assignments of error, we affirm

the trial court's judgment.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,

BY: _____
Kristy S. Wilkin, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**